NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

KATHLEEN M.,

            Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

</td><td>

Civil Action No. 25-12777 (MAS)

**MEMORANDUM OPINION**

</td></tr>
</table>

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Kathleen M.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") determination that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

## A.    Procedural Background

Plaintiff filed an application for DIB on December 30, 2022, alleging a disability onset date of June 1, 2022. (AR 17, ECF No. 6.[2]) The Social Security Administration (the "Administration") denied Plaintiff's initial application on September 15, 2023, and upon reconsideration on October 24, 2023. (*Id.*) Thereafter, Plaintiff requested a hearing before the ALJ. (*Id.*) The ALJ subsequently denied Plaintiff's claim on August 28, 2024. (*Id.* at 14-28.) Plaintiff submitted a request for review, which the Appeals Council denied on May 15, 2025. (*Id.* at 1-5.)

On July 7, 2025, Plaintiff filed the instant appeal. (*See generally* Compl., ECF No. 1.) Plaintiff filed her moving brief in this action on November 2, 2025 (Pl.'s Moving Br., ECF No. 9), the Commissioner opposed on January 9, 2026 (Def.'s Opp'n Br., ECF No. 11), and Plaintiff replied on January 12, 2026 (Pl.'s Reply Br., ECF No. 12).

## B.    The ALJ's Decision

The ALJ's August 28, 2024, decision concluded that Plaintiff was not disabled. (AR 28.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 18-19 (citing 20 C.F.R. § 404.1520).) As an initial matter, the ALJ found that Plaintiff "meets the insured status requirements of the . . . Act through September 30, 2028." (*Id.* at 19.) At step one, the ALJ found that Plaintiff has not "engaged in substantial gainful activity" since June 1, 2022. (*Id.* at 19-20 (citing 20 C.F.R. § 404.1571, *et seq.*).) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) major depressive disorder; (2) generalized anxiety disorder; (3) post-traumatic stress disorder; (4) attention deficit hyperactive disorder; and (5) intracranial hypertension. (*Id.* at 20 (citing 20 C.F.R. § 404.1520(c)).)

---

[2] The Administrative Record ("AR") is located at ECF Nos. 6 through 6-8. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

2

Despite the ALJ finding Plaintiff had these severe impairments, he determined at step three that Plaintiff does not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments. (*Id.* at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

The ALJ then found that Plaintiff possessed the residual functional capacity (the "RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations:

> [Plaintiff] can . . . occasionally balance, stoop, crawl, kneel, and crouch. She needs to avoid more than occasional exposure to work environments with vibration, loud noise, and proximity to hazards such as unprotected heights and dangerous moving machinery. She is able to understand and carryout simple instructions, adapt to occasional changes in the routine work setting, and tolerate occasional interaction with the public.

(*Id.* at 22.) In determining that Plaintiff had the RFC to "perform light work" subject to certain limitations, the ALJ thoroughly detailed Plaintiff's medical history, including Plaintiff's subjective testimony and Plaintiff's complete medical records. (*Id.* at 22-26.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 26 (citing 20 C.F.R. § 404.1563).)

In the fifth step, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a: (1) merchandise maker; (2) bench assembler; and (3) sorter. (*Id.* at 26-27 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The ALJ found the vocational expert's testimony in this regard consistent with the information provided in the Dictionary of Occupational Titles considering Plaintiff's age, education, work experience, and RFC. (*Id.* at 27.) As such, the ALJ concluded that Plaintiff was not disabled from June 1, 2022, through August 28, 2024. (*Id.*)

3

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (internal quotation marks and citation omitted). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (explaining that the reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence"). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing

4

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

**B.    Establishing Disability**

To be eligible for DIB, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disability. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 140-41, 146 n.5 (1987). The third step

requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB. *Id.*; *id.* § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See id.* § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *Id.* If the claimant's RFC permits previous employment, she is not "disabled" and thus is not entitled to DIB. *Id.* § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive DIB. *Id.*

## III.   DISCUSSION

Plaintiff alleges that the ALJ's determination is not supported by substantial evidence and, as such, remand is required. (*See generally* Pl.'s Moving Br.) Plaintiff specifically takes issue with the ALJ's step three analysis and RFC determination. (*Id.*) The Court addresses each argument in turn. For the reasons that follow, the Court concludes that the ALJ's decision is supported by substantial evidence.

6

A.    **The ALJ's step three analysis for Plaintiff's impairments is supported by substantial evidence.**

Plaintiff first argues that remand is warranted because the ALJ failed to adequately explain why the severity of Plaintiff's mental impairments did not satisfy Paragraph C for listings 12.02, 12.04, and 12.06. (*Id.* at 26-27.) In opposition, the Commissioner contends that the ALJ's discussion of the Paragraph C criteria was sufficient given that it would have been duplicative of the ALJ's discussion of the Paragraph B criteria. (Def.'s Opp'n Br. 11-12.)

To demonstrate the existence of a severe mental impairment for listings 12.02, 12.04, and 12.06, a claimant must either satisfy: (1) Paragraphs A and B of each listing; or (2) Paragraphs A and C of each listing. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A)(2). Paragraph B of each listing represents "the areas of mental functioning a person uses in a work setting," such as: (1) understanding; (2) remembering or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; and (5) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). A claimant must demonstrate an extreme limitation of one or a marked limitation of two of those areas of mental functioning to satisfy Paragraph B. *Id.* §§ 12.02(B), 12.04(B), 12.06(B).

Paragraph C requires that a mental disorder be "serious and persistent," spanning over a period of at least two years. *Id.* § 12.00(A)(2)(c). Paragraph C, additionally, requires evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder [ ]; and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]

*Id.* §§ 12.02(C), 12.04(C), 12.06(C).

7

At step three, the ALJ must provide "some discussion" of his determination, but "need not 'use particular language or adhere to a particular format in conducting [his] analysis,' as long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Even if the ALJ's step three analysis is deficient as to certain impairments, Plaintiff must provide reasons as to why she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Id.* Importantly, in evaluating whether the ALJ has discharged his duty, it is not the Court's role to re-weigh the evidence, either against or in favor of the plaintiff, or to "impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

As previously established, the ALJ concluded that "the severity of [Plaintiff's] mental impairments considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06." (AR 21.) In so holding, the ALJ considered the requirements of both Paragraph B and Paragraph C. (*Id.*) With respect to Paragraph B, the ALJ found Plaintiff moderately limited in every area of mental functioning. (*Id.* at 21-22.) For each category of mental functioning, the ALJ considered Plaintiff's subjective testimony and compared it to the objective medical evidence, as well as the findings of Dr. Mona Krishan, PhD ("Dr. Krishan"), with whom Plaintiff attended a consultative exam in July 2023. (*Id.* (citing AR 272-279 ("Ex. 6E"), 494-540 ("Ex. 5F"), 629-33 ("Ex. 11F"), 634-64 ("Ex. 12F")).) As an alternative, the ALJ considered the Paragraph C requirements and concluded that "[i]n this case, the evidence fails to establish the presence of the [P]aragraph C criteria. [Plaintiff] is able to drive, prepare a meal, shop and manage her own money (Exhibit 6E)." (*Id.* at 22.)

8

The Court is satisfied that the ALJ's determination with respect to the Paragraph C requirements is supported by substantial evidence in the record. Here, Plaintiff could not demonstrate either an extreme limitation in her ability to adapt or manage herself or a marked limitation of that ability and a marked limitation in another area of mental functioning. Plaintiff also could not establish that she had minimal capacity to adapt to changes in her daily life under Paragraph C. (*See* AR 22 (citing Ex. 6E).) Although the ALJ considered Plaintiff's testimony that she does not like change in her routine, the ALJ found that the objective medical evidence demonstrated Plaintiff's ability to drive, prepare a meal, shop, and manage her own money. (*Id.* (citing Ex. 6E).) The Court finds no error with the ALJ's reasoning in this regard and finds that substantial evidence supports the ALJ's analysis at step three.[3]

**B.      The ALJ's RFC determination is supported by substantial evidence.**

Plaintiff next challenges the ALJ's RFC determination for three reasons. Plaintiff argues that the ALJ failed to: (1) consider all the work restrictions flowing from the combination of Plaintiff's impairments, such as her inability to concentrate, headaches, loss of vision, and hip pain; (2) explain the persuasiveness of certain medical opinions; and (3) credit Plaintiff's subjective testimony concerning her symptoms. (Pl.'s Moving Br. 11-26, 28-29.) The Court addresses each argument in turn.

---

[3] The Court, additionally, rejects Plaintiff's challenge to the ALJ's step-three analysis because she has not articulated how she would have satisfied the Paragraph C criteria based on the evidence put before the ALJ. (*See* Pl.'s Moving Br. 26-27.)

### 1.    The ALJ's RFC assessment of Plaintiff's impairments

Plaintiff argues that the ALJ's RFC analysis lacks consideration of Plaintiff's work-preclusive limitations, such as her intracranial hypertension, vision loss, and frequent headaches. (*Id.* at 11-18.) The Commissioner contends that the ALJ's opinion addressed Plaintiff's impairments and that the medical evidence: (1) demonstrated that Plaintiff's headaches were controlled with medication; (2) reflected that surgery or further treatment was not recommended for her intracranial hypertension; and (3) contained no ophthalmological records that supported a finding that Plaintiff suffers from work-preclusive vision loss. (Def.'s Opp'n Br. 5-6.)

"A claimant's RFC reflects 'what [the claimant] can still do despite [his or her] limitations,' 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c)." *Morris v. Comm'r of Soc. Sec.*, No. 19-13744, 2020 WL 2764803, at *4 (D.N.J. May 28, 2020) (alterations in original). An RFC determination requires the ALJ to consider a claimant's symptoms and the extent to which those symptoms are reasonably consistent with objective medical or other evidence. 20 C.F.R. § 404.1529(a).

Here, the ALJ considered Plaintiff's subjective testimony concerning her intracranial hypertension and headaches (AR 23), as well as Plaintiff's reports of vision loss due to her intracranial hypertension (*id.* at 24). The ALJ explained that "[a]fter careful consideration of the evidence," he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 23.) The ALJ discussed Plaintiff's treatment with her neurologist, Eliot Chodosh, MD ("Dr. Chodosh"), noting that Plaintiff was being treated

10

with Topamax in March of 2023, and in a follow-up visit, she reported significant improvements with her headaches. (*Id.* at 24 (citing AR 608-20 ("Ex. 9F"), 665-69 ("Ex. 13F"), 693-706 ("Ex. 17F")).) The ALJ noted that at the follow-up visit, Dr. Chodosh acknowledged that Plaintiff reported that the vision in her right eye was unchanged. (*Id.* (citing Ex. 9F).) Additionally, the ALJ recounted Plaintiff's visits with the state agency consultants, who opined that Plaintiff was suffering from non-severe intracranial hypertension and that she had minimal vision limitations. (*Id.* 24 (citing AR 59-71 ("Ex. 1A"), 73-84 ("Ex. 3A")).) Ultimately, the ALJ partially rejected the opinions of the state agency consultants because he found that Plaintiff met her burden in demonstrating that her intracranial hypertension was a severe impairment and, as such, limited Plaintiff to light exertion as a precautionary measure. (*Id.* at 25 (citing Ex. 1A).)

Despite Plaintiff's assertion to the contrary (Pl.'s Moving Br. 18), the ALJ thoroughly considered Plaintiff's intracranial hypertension, headaches, and vision loss. Insofar as Plaintiff contends that an ophthalmologist should have reviewed Plaintiff's magnetic resonance imaging ("MRI"), it was her burden to submit sufficient medical evidence to demonstrate that her vision loss constituted more than a minimal impairment. *Malloy*, 306 F. App'x at 763 (noting the burden of persuasion rests with the claimant in steps one through four). The Court, additionally, rejects the notion that the ALJ relied on stale evidence from the state agency consultants (Pl.'s Moving Br. 17), given that the ALJ stated that he reviewed all the evidence in the record (AR 18). The Court takes the ALJ at his word. *See Ramirez v. Kijakazi*, No. 22-431, 2023 WL 5916906, at *5 (M.D. Pa. Sep. 11, 2023) (explaining that the ALJ "stated [that] he rendered his findings after consideration of the entire record[,]" and the Court "should take [the ALJ] at his word"); *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word[.]"). Plaintiff's arguments in this regard are an attempt to have this Court re-weigh the evidence

11

presented before the ALJ, which is not permitted. *Chandler*, 667 F.3d at 359. The Court, accordingly, finds the ALJ's discussion of Plaintiff's intracranial hypertension, headaches, and vision loss supported by substantial evidence in the record.

### 2.    The ALJ's assessment of opinion evidence

Plaintiff argues that the ALJ did not adequately explain the persuasiveness of: (1) Dr. Franky Merlin, M.D.'s ("Dr. Merlin") opinion; (2) Dr. Krishan's opinion; and (3) the opinions of the state agency consultants. (Pl.'s Moving Br. 18-26.) The Commissioner contends that the ALJ did not err because the ALJ: (1) appropriately considered the examinations of Drs. Merlin and Krishan but did not need to conduct a persuasiveness analysis because they did not provide medical opinions; and (2) did not "implicitly reject" the state agency consultants' findings and, instead, found them persuasive by determining Plaintiff has a moderate limitation "in interacting with others" and provided her with an RFC limitation for "occasional interaction with the public." (Def.'s Opp'n Br. 8-9.) The Court addresses each argument in turn.

When making a disability determination, an ALJ must review and evaluate all medical opinions that are part of the record. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). "When weighing medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphases in original). The factors for consideration are: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors and must be considered. *Zabrowski*, 115 F.4th at 638; *see also* 20 C.F.R. § 404.1520c(b)(2). "[An ALJ] need not reiterate the magic words 'support' and 'consistent' for

each doctor," but must "explain only the dispositive reasons for [his or her] decision[.]" *Zabrowski*, 115 F.4th at 639.

This analysis applies to only medical opinions, as distinguished from medical evidence. *Sean B. v. Comm'r of Soc. Sec.*, No. 24-10922, 2025 WL 2848391, at *8 (D.N.J. Oct. 8, 2025). A medical opinion is "a statement from a medical source about what a [plaintiff] can do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). Medical evidence, on the other hand, constitutes "medical signs, laboratory findings, or both[.]" *Id.* § 404.1513(a)(1). "While an ALJ obviously must consider medical records in rendering his decision, '[o]nly those statements within the records that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms, constitute medical opinions' subject to the procedural requirements of 20 C.F.R. § 404.1527(c) [and § 404.1520c(c)]." *Hawley v. Colvin*, No. 13-296, 2014 WL 3747686, at *7 n.3 (W.D. Pa. July 29, 2014) (first alteration in original) (citation omitted).

### a.    Dr. Merlin's examination

Plaintiff first takes issue with the ALJ's assessment of the medical evidence relating to Dr. Merlin's examination. She contends that the ALJ did not adequately explain how Plaintiff could stand, carry, and walk for six hours per day when Dr. Merlin opined that Plaintiff's obesity and hip arthritis would affect these activities. (Pl.'s Moving Br. 20.)

The ALJ determined, at step two, that Plaintiff had a non-severe impairment with respect to her obesity. (AR 20 (citing AR 593-607 ("Ex. 8F")).) Consistent with that finding, in the ALJ's RFC analysis, he detailed Dr. Merlin's medical examination of Plaintiff, observing that Plaintiff: (1) was not in acute distress; (2) presented with a normal gait; (3) had no difficulty getting on or off the exam table; (4) possessed a normal grasping ability and manipulative strength; and

13

(5) could flex her spine, squat, and walk on her heels and toes. (*Id.* at 25 (citing AR 621-628 ("Ex. 10F").) The ALJ additionally reported Dr. Merlin's finding that Plaintiff's "motor is 5/5 bilaterally, reflexes 2+/2+ bilaterally, and straight leg raise 0-90 degrees bilaterally." (*Id.* (citing Ex. 10F).) The ALJ did not state that Dr. Merlin presented a medical opinion with respect to Plaintiff's claimed physical limitations. (*See generally id.*)

The ALJ did not err by failing to conduct a persuasiveness analysis for Dr. Merlin. Despite Plaintiff's assertion that Dr. Merlin provided a medical opinion (Pl.'s Moving Br. 20), the Court does not find one upon review of the medical records submitted in connection with this appeal. (*See* Ex. 10F.) Dr. Merlin's report listed Plaintiff's symptoms, summarized the findings of Plaintiff's physical examination, and provided a diagnosis. (*Id.*) Dr. Merlin, however, did not opine as to Plaintiff's impairment-related limitations or restrictions. (*Id.*) Because Dr. Merlin did not proffer a medical opinion, the ALJ did not need to assess the persuasiveness factors enumerated by 20 C.F.R. § 404.1520c(c). *See Hawley*, 2014 WL 3747686, at *7 n.3. Having determined that the ALJ thoroughly considered Dr. Merlin's examination in his RFC analysis, the Court discerns no error.

### b.  Dr. Krishan's examination

Plaintiff next challenges the ALJ's discussion of Dr. Krishan's medical evidence. She argues that Dr. Krishan opined that Plaintiff was unable to adequately interact or respond to others, yet the ALJ failed to discuss this in his RFC analysis. (Pl.'s Moving Br. 21.)

At step three, the ALJ found Plaintiff had a moderate limitation in interacting with others. (AR 21.) The ALJ outlined Dr. Krishan's medical examination notes of Plaintiff's: (1) fear of large crowds and being around people she does not know; (2) anxiety and panic when leaving the house, going out, and/or being around crowds; (3) self-isolation; and (4) cooperation, yet avoidant eye

14

contact. (*Id.* (citing Exs. 6E, 11F, 5F).) In the RFC analysis, the ALJ acknowledged Plaintiff's subjective testimony that she faces problems leaving the house and feels unsafe, experiences panic attacks, has overall difficulty in social settings, and has not been able to effectively participate in group therapy or successfully find an individual therapist. (*Id.* at 23.) In discussing the medical evidence, the ALJ observed that: (1) Plaintiff started seeing a psychiatric nurse practitioner in July 2023; (2) Plaintiff's anxiety was improving due to her combined prescriptions of Abilify and Lexapro; and (3) Plaintiff was volunteering, as well as caring for her mother and her dog. (*Id.* at 24 (citing Ex. 12F).) The ALJ then turned to the opinions of the state agency consultants, Wanda De Cardona ("Dr. De Cardona"), psychologist, and Jill Rowan, PhD ("Dr. Rowan"), stating that their treatment notes support Plaintiff's moderate limitation "in all areas of mental functioning" due to her anxiety and depression, yet she is able to follow simple instructions. (*Id.* at 25 (citing Exs. 1A, 3A, 5F, 6F, 11F, 12F, AR 680-693 ("Ex. 16F")).) The ALJ determined that Plaintiff's treatment with medication "and her mental status findings are mostly within normal limits, but support for a reduced [RFC] is consistent with reducing exposure to symptom triggers in [] simple unskilled work with limited interaction[.]" (*Id.*) Consistent with this finding, the ALJ limited Plaintiff to performing "simple work with limited social demands and [] changes[.]" (*Id.* at 26.)

Here, the ALJ did not err by not conducting a persuasiveness analysis for Dr. Krishan. Like Dr. Merlin, Dr. Krishan did not provide a medical opinion as to Plaintiff's limitations and, therefore, the ALJ did not need to assess the persuasiveness factors. *See Hawley*, 2014 WL 3747686, at *7 n.3. Dr. Krishan provided a medical examination, which the ALJ thoroughly discussed throughout his determination, and weaved Dr. Krishan's findings into his RFC analysis. (*See* AR 25 (citing Ex. 11F (Dr. Krishan's examination)).) The Court thus finds no error.

15

### c.    The opinions of the state agency psychologists

Plaintiff next takes issue with the ALJ's analysis with respect to the state agency's psychologists. She argues that the ALJ either failed to incorporate or failed to explain why the ALJ "implicitly rejected" the medical opinions of Drs. De Cardona and Rowan, who opined that Plaintiff has moderate limitations in responding to others by limiting her to "occasional interactions with the public." (Pl.'s Moving Br. 22-26.)

As already discussed, the ALJ considered the state agency consultants' opinions with respect to Plaintiff's mental RFC assessment. Moreover, the ALJ determined the opinions of Drs. De Cardona and Rowan—that Plaintiff is moderately limited in interacting with the public—are supported by the record and persuasive. (AR 25 (citing Exs. 1A, 3A, 5F, 6F, 11F, 12F, 16F).) The ALJ acknowledged that Plaintiff's treatment with medication and mental status are "mostly with[in] normal limits, but support for a reduced [RFC] is consistent with reducing exposure to symptom triggers in [] simple unskilled work with limited interaction and changes in routine." (*Id.*) As such, the ALJ limited Plaintiff to performing "simple work with limited social demands and [] changes" (*id.* at 26), and "occasional interactions with the public" (*id.* at 22).

Despite Plaintiff's contention otherwise, the Court fails to see how the ALJ "implicitly rejected" the opinions of Drs. De Cardona and Rowan. The ALJ here, instead, found their opinions persuasive, supported, and consistent with the objective medical records. (*Id.* at 25.) Given that Plaintiff was being treated with medication for her anxiety and demonstrated improvements, (*id.* at 24 (citing Ex. 12F), 25 (citing, *inter alia*, Ex. 12F)), the ALJ's conclusion that Plaintiff could tolerate occasional interactions with the public and limited social demands is supported by substantial evidence in the record. As previously stated, the Plaintiff's RFC is the most she can do despite her limitations. *Morris*, 2020 WL 2764803, at *4. The Court, accordingly, finds no error

16

warranting remand.

### 3.    *Plaintiff's subjective testimony*

Plaintiff contends remand is necessary here because the ALJ failed to adequately credit Plaintiff's subjective testimony of her post-traumatic stress disorder and "fear of the human race," which would result in a work-preclusive limitation in her ability to interact with others. (Pl.'s Moving Br. 28-29.) Plaintiff suggests that the ALJ's failure to discuss Plaintiff's testimony precludes the Court from conducting meaningful review. (*Id.* at 29.)

A claimant's "[s]ubjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). There must be objective medical evidence to corroborate a claimant's subjective complaint. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).

Despite the ALJ finding that Plaintiff has, among other things, depression, anxiety, and post-traumatic stress disorder as severe impairments, the ALJ determined Plaintiff has no more than a moderate limitation in interacting with others. (AR 20-21.) The ALJ, additionally, considered Plaintiff's subjective account of the difficulties she faces in public settings, finding that her "impairments could reasonably be expected to cause the alleged symptoms; however," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 23.) In evaluating the medical evidence, the ALJ specifically found that Plaintiff: (1) was compliant with taking her medications; (2) started mental health treatment with a psychiatric nurse practitioner; (3) was experiencing normal moods; and (4) was able to volunteer, care for her mother and train her dog. (*Id.* at 24 (citing Ex. 12F); *see also id.* at 25 (discussing Plaintiff's treatment with medication, finding "her mental status . . . [is] mostly with[in] normal limits").)

17

Based on the record, the ALJ concluded that Plaintiff's treatment with medication supports her RFC of limited social demands and occasional interactions with the public. (*Id.* at 22, 26.)

Although Plaintiff claims error because the ALJ did not explicitly reference her "fear of the human race," the ALJ's discussion of Plaintiff's subjective mental health symptoms, and the reasons for which he found those symptoms not consistent with the record, is supported by substantial evidence. Plaintiff's challenge to the ALJ's consideration in this regard is merely a disagreement with the ALJ's decision. *See Perkins v. Barnhart*, 79 F. App'x 512, 514-15 (3d Cir. 2003). The Court finds no reason to disturb the ALJ's decision.

## IV.    CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's final decision. The Court will issue an order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July _____8ᵗʰ_____, 2026

18